Debtor and Advanced Telecommunication Network, Inc. Appellant. Mr. Baruch. Yes, sir. Did I pronounce that right? You did. Thank you, sir. May it please the Court. Good afternoon. My name is Jason Baruch. I represent the appellant in this case, Advanced Telecommunication Network, Inc., also known as ATN. And if I may begin. You might want to make sure you speak directly into that microphone there. Yes, sir. That will help you. Secondly, do you want to save any time for rebuttal? Five minutes, please. Okay. That request will be granted. Thank you. Your Honor, ATN respectfully submits that this case presents interesting policy issues, important policy issues involving the use of offshore asset protection trusts to secrete assets away from the rightful owner. It also presents the issue of dueling bankruptcy courts dealing with a specifically identified piece of estate property. You want to be in the Florida Bankruptcy Court. And what is the difference between, for our purposes, between a preferential transfer and a fraudulent conveyance? And why? Which happened here according to the Florida courts? And why is it significant? Yes, Your Honor. What happened here was a fraudulent transfer under Section 544 of the Bankruptcy Code. A preference deals with Section 547. And briefly, Your Honor, a preference would deal with a payment by the debtor that was a preference to a specific creditor, giving that creditor, in essence, a benefit over other creditors for receiving an unduly large payment. Whereas what we have here is a fraudulent transfer, which under the Bankruptcy Code was incorporated through New Jersey law. And briefly, that law, Your Honor, is one where a transfer is avoided when the transferor company was insolvent at the time and did not receive reasonably equivalent value for that transfer. So what's the consequence in this case? The consequence of the fraudulent transfer, Your Honor? Yes. The consequence is the transfer was avoided, and now under Section 541, ATN was permitted to seek a recovery under Section 550. So the way the process works, Your Honor, you would get an avoidance as a fraudulent transfer. So you have an order of recovery now. That's correct, Your Honor, under Section 550. How come in his individual bankruptcy, you never objected to that bankruptcy on the grounds that it was in bad faith? Matter of fact, you went along with his getting discharged. Your Honor, we do have that option at our disposal even to the present day to object on the basis of bad faith. You can't object now because that bankruptcy is closed. Well, Your Honor, actually, if you look at the case law on that, it's technical. But even after a discharge, you can still seek to dismiss the case for bad faith. So long as there is work left to be done in the case, the mere fact that there's a discharge doesn't preclude that. But, Your Honor, the bottom line to your question is ATN thought at the time and continues to think that the most direct approach to this is the simplest one. The assets at issue are assets of ATN's estate, and the state doesn't apply. Let's let the Florida court continue its work that had been going on for 10 years. Let me talk about, raise that point for a moment. You're raising the question, and I don't know whether you raised it below or you briefed it in response to the district court's raising it, but you say under the Princess Lita doctrine that the New Jersey courts don't have jurisdiction. Correct, sir. Okay. Now, they don't have jurisdiction over this claim, but yet it was you that started the adversary action in Mr. Allen's bankruptcy. Your Honor, we started a contested matter in the bankruptcy seeking to have the New Jersey court not exercise jurisdiction over the matter. And we didn't raise Princess Lita specifically identified as such, but if you look at the purpose of what ATN was trying to accomplish, it was to You said New Jersey Bankruptcy Court. We don't want you to assume. We do not want you to put the money in the Cook Island Trust in Mr. Allen's bankruptcy. That's what you were saying. Your Honor, if I understand you right, what we were saying was You couldn't have raised the jurisdictional question in the first instance. I'm sorry, we could have or we couldn't have. You could not have. Your Honor, we probably could have, but we But you didn't. We did not raise Princess Lita at the outset. That's correct. Okay. But now you're saying Princess Lita applies. We don't even want to be here. That's correct. The effect would be the same. Right. If the stay doesn't apply, we're back in Florida. If Princess Lita applies, we're back in Florida. So it's another alternative basis to get to the same place. Well, Princess Lita can't apply. There's no fund before any court here, either in New Jersey or in the Fifth Circuit. The funds are probably somewhere offshore. There's no fund in court. Without a fund, there can't be any Princess question. Your Honor, we Your action was an impersonal action, was it not? We don't believe so, Your Honor, if I may explain that. The recovery order, which is also known as a repatriation order, specifically traced the funds to the offshore account and dealt with the deposit of those funds into a specific account offshore and the withdrawal of those funds offshore. But those funds were never before the court. They were offshore. In order to have the Princess Lita apply, there has to be a fund subject to the immediate jurisdiction of the court. Your Honor, we believe there was because the Florida court actually voided the trust. So what you have in effect is a person who has control under Eleventh Circuit law in Florida, has control of those funds offshore. So the Florida court did, in fact, have jurisdiction over this. The trust was void. All you had was simply an account holder who had wired money offshore to try to thwart the jurisdiction of the United States court, and the Florida court saying, no, under binding precedent it does not work. You are ordered to repatriate the money to Florida. Okay. If we disagree with you on the jurisdictional problem under Princess Lita, explain why we shouldn't conclude that the fraudulently transferred funds, and it appears that there is a bona fide allegation of fraud in the transfer of these funds, why they shouldn't be property of Allen's estate and not ATM. Sure. Thanks for that. That's the basis of your claim here. What makes you think that this should be concluded in Allen's bankruptcy instead of ATM's bankruptcy? That's the question, Your Honor. Let me explain that. First of all, just the simplest first answer is Mr. Allen did not even attempt to schedule the assets in his own bankruptcy. They were never listed on any schedule? Correct, Your Honor. That's my simplest one. Well, his answer, before you even go any further, he's going to say, I didn't list it because they're no longer my funds. They were in some trust offshore, so I didn't list them. He may. Your Honor, the trust… That's his position. I didn't list them because they're not my funds. They're my wife's funds or whatever my wife did with it. He did ultimately, uses our word, funnel the funds to his wife who withdrew $2.5 million. But, Your Honor, there's much more to it. Section 541 is really the technical answer, and it's quite clear. Here's what happened, Your Honor. The Florida court entered an avoidance under fraudulent transfer law. Under the bankruptcy statute, then ATN had the right to seek a recovery under Section 550 that unequivocally made those funds property of ATN's estate. And let me explain. The district court, first of all, agrees with us. This was a recovery order under Section 550. What is the effect of that? This is right out of the bankruptcy court, if Your Honors would indulge me to read a brief phrase. The property of the estate includes, and this is a key phrase, quote, wherever located and by whomever held, drop down to 541A3, any interest in property that the trustee recovers under Section 550. Your Honors, we respectfully submit we fit squarely under that provision. In case there were any doubt about that, A7. But you acknowledged that it was not listed on the schedule. On this debtor's schedule. There was no listing of account in the trust in Cook Island. That was not on the schedule. Your Honor, it's important to determine which estate we're talking about. I represent Mr. Allen's bankruptcy. Right. What I'm seeking to establish to this Honorable Court is that this was property of ATN's estate. Okay, but why hasn't that already been established in Florida? It has been. Okay. Why do you need the New Jersey Bankruptcy Court to reaffirm what the Florida Bankruptcy Court has said and what the District Court in Florida has affirmed? Because, Your Honor, it is not appropriate, while there is a Chapter 7 case going on, for us simply to ignore it and continue with the Florida Bankruptcy Court. Respectfully, it's just not done that way. The way you would do it is you would go to the New Jersey Court and connect the dots and show the court that the Florida Court is dealing with its own debtor's property. And so the New Jersey Court, under 1334, should not address that issue. And that's what we did. And they didn't, did they? I'm sorry? I mean, the New Jersey Bankruptcy Court has not listed this asset as an asset of Mr. Allen's.  But listen, this is what's interesting, Your Honor. The court still found that the stay applies and ATN cannot continue to pursue its own property. Did you file a claim in bankruptcy in New Jersey? In the husband's case, we did not. Even though you had a judgment? Even though we had a judgment, yes. Your position is that this is, you're not involved in the husband's bankruptcy. You're involved strictly in ATN's bankruptcy. Absolutely not. You have a repatriation order and you're entitled to your money under that. Yes, 541A3 and A7, which I didn't spell out for you, but that one's even more. Just for my curiosity, where is the money? Do you have any idea where the money is now? We know that originally he got the couple million dollars. He settled a trust offshore. Where did it go from there? Do you have any idea? Your Honor, here's the last evidence we have. The last hearing before the Florida Court, Allen's counsel, and this is in the appendix. I can show you gentlemen. But the attorney said there's a few hundred thousand dollars left. Now, we believe there was obviously an incentive to underestimate the amount. The last we heard, there was money in the account, and the debtor literally contemptuously violated the Florida Court order to give us that answer, and we ended up in a New Jersey court saying that we couldn't proceed in Florida, which is the court that had been dealing with the ownership of this property for ten years. The New Jersey bankruptcy of New Jersey, the Florida bankruptcy court judge, has declined to move ahead on the contempt proceeding pending the New Jersey proceedings? Yes, Your Honor, and that will always happen. If you have one bankruptcy court not granting relief from stay, no matter how incorrect, you can't go forward with the original. So we haven't even tried, Your Honor. And tell us again what the difference is between this offshore fund, however, whatever the amount is, the difference between it being in the New Jersey court and Allen's bankruptcy or in the Florida court under ATN's bankruptcy. How is it treated differently in each of those? It's treated differently in a very significant way. If it's property of ATN's estate, as we submit the Florida court showed clearly, then that asset can be accounted for and recovered actually tangibly if we have a compliance with the order, and that money goes to ATN's creditors who have been waiting for over a decade to get paid. And if it's properly considered in an Allen bankruptcy in New Jersey? That money presumably would go to the Chapter 7 trustee who would then liquidate whatever needs to be liquidated, and it would go to Mr. Allen's creditors. But on that point, he didn't list it on his schedule, correct? Right. So, therefore, it's not part of that bankruptcy. Ironically, the New Jersey court disagreed. The New Jersey court said even we pointed out it's not he hasn't even scheduled it. The New Jersey court said, nonetheless, his estate has an interest, and it's not property of ATN's estate. We can't make sense of it, Your Honor, because it doesn't make sense. All right. So that's really the issue. It's a key issue. That's really the key issue. It's irreconcilable. There's no way to reconcile the fact that Mr. Allen never scheduled the asset, and the New Jersey court, nonetheless, said it's his. And as a consequence, you have a Florida judgment, which, if you can't execute against the trust in Cook Island, you'd like to be able to go after Mr. Allen to execute in that judgment, but you'd be barred by the discharge. Is that what you're saying? That is 99 percent correct, Your Honor. Your Honor, one slight correction there is it wouldn't be executing on Mr. Allen's assets. These are ATN's traced assets. It would be utilizing Mr. Allen's knowledge to account for the money that he secreted and then recovering our own assets. All right. In other words, you're going after the money that went into the Cook Islands or from wherever it went from the Cook Islands where it could be any number of places, but that money is part of the repatriation order and is your claim is in Florida. Bankruptcy said it's part of the ATN's bankruptcy, not Allen's bankruptcy. Precisely. All right. We'll have you back on rebuttal, but we will cut into your rebuttal time a little bit since you went over. Fair enough. Thank you. Mr. Allen. Good afternoon. I guess to start out with, I beg your indulgence somewhat since, as a pro se litigant, I've never spoken before a court before, let alone one at this high level. I'm really not sure how to proceed. I guess I would start just by making a couple comments based on what Mr. Baruch had said. I just want to make it clear to the court, as I believe you have seen in the accounting that I filed as an attachment to my motion, to ask the court to deny Mr. Baruch the ability to admit to the court a supplemental appendix that he had. Yeah, we've seen that accounting. One, the seminal question here, Mr. Allen, is this. ATN, through its trustee, is trying to recover funds which the corporation says is their funds. The bankruptcy court and the 11th Circuit have said they have the right to go after those funds, the ATN's funds. And there's a repatriation order, two orders, as a matter of fact, proceeding with schedule. In order to obtain those funds, which it appears were taken from ATN, given to you and then you've settled a trust in Offshore Island. Their position is they are not pursuing you or your bankruptcy. They are pursuing funds which the Florida courts have said belong to ATN. Why shouldn't they be permitted to pursue those funds that were settled in the Cook Islands or wherever else those funds presently are located? They are not pursuing anything against you. Their position is they're pursuing funds that the Florida court says belong to ATN. Do you understand my question, sir? I understand what you're saying, but I guess I would begin to answer that by the fact that there are no remaining funds and there is no trust. Well, that's not a question. They don't have to take your word for it that there are no remaining funds. They want to satisfy themselves and not your word, since they're not only going to look at the Cook Island funds, they're going to look where they were dispersed after they left the Cook Island fund, Cook Island trust. So there's no question before the court as to the amount that's left. The question is do they have a right to pursue those funds without being inhibited by an order from a New Jersey court staying their ability to pursue those funds? Should that not have taken place in my bankruptcy where they had ample opportunity to take me through the whole exercise and pursue those funds? Their position is they are not pursuing any funds that belong to you or that belong to your bankruptcy. They're pursuing funds that belong to ATN that they claim, and there seems to be some proof to support this, were fraudulently removed from ATN, given to you, and with which you settled a trust in the Cook Islands. So their position is they are not pursuing anything that you own. Indeed, they say as proof of that, you don't own it because you didn't even list it on your schedules as an asset of yours. Their position is they're pursuing funds that are owned by ATN. Why should they be permitted to do that without being enjoined by a New Jersey court prohibiting them from pursuing those funds? First of all, I would just want to make sure the court's aware that it was a constructively fraudulent transfer. I did not do anything wrong, but to go on and continue to attempt. Whatever it is, they claim there was a fraudulent transfer, constructive or whatever, and under fraudulent trust doctrine or whatever, they want to pursue those funds, and they have an order allowing them to pursue those funds. And I think a simple follow-up question to that is you didn't list it on your schedule in New Jersey. You apparently didn't think it was yours. Is that correct? No, it wasn't mine. It's my understanding that it was property of the trust, so it was not. It was property of what trust? The Shingaloe Family Trust. The Shingaloe Trust. So that's the reason why you didn't list it in New Jersey. That's my understanding. I was operating at my attorney's instructions, but that's my understanding. You didn't fail to list it in New Jersey because you thought it was ATN's property. No. You didn't list it because at the time you filed, you were advised that it was Shingaloe Trust property. That's correct. Okay. I apologize for not being able to answer your question, Your Honor. I think that you perhaps, I mean, you felt that way, even though there was an order from the Florida Bankruptcy Court that was affirmed by the Florida District Court prior to your bankruptcy, correct? I'm sorry. I felt that way that it was the property of the trust. You felt that it was the property of the Shingaloe Trust, even though the Florida courts had spoken. Well, that's a gray area. I attempted to repatriate the funds, and the trust and the trustee would not allow it. I guess they were part of their economy in the Cook Islands. It was dependent on their trusts, and the way they related to me was that they could not send me the money if I was going to repatriate it under court order because that would be against the documents that created the trust, number one. And number two, either by inference or directly, they gave me the impression that it would really damage the trust industry within the Cook Islands. At that time, was your wife a beneficiary? She was. Okay. She was at all times a beneficiary. Did you ask her to waive her interest and allow that interest to be conveyed to the Florida bankruptcy court? That never occurred to me or my legal team. And you were never asked that? We were never asked to do that. You were never directed to do that? We were never directed to do that. Nobody ever asked me whether it be a court or ATN's representatives. Nobody ever asked me to do that. We were in a quandary as to how to answer the repatriation request because I, like anybody else, have fear of the coercive power of the court to jail me or to do whatever they can do. And I was really in a quandary. I don't want to say I was a victim of my attorneys and the court system and the trust system, but I feel as though I became a pawn. Once the money was paid and put into the trust, I was trapped as though I were on a one-lane road with no way to turn around and change direction. I couldn't do anything. I couldn't get out of this lawsuit. Well, let me ask this. If that's your position, what is your response to ATN's assertion that you committed a wrongful act by authorizing, as your secretary and shareholder of the company, ATN to pay more than $6 million, I think it was, even though you alleged at the time that ATN was in a serious state of decline under the leadership of Mr. Carpenter, I guess it was, and you authorized that payment to be made? Yeah, my assertion in that sense was it was a heated litigation for a company that I had co-founded with Mr. Carpenter for four years or so where I was locked out of the company and locked away from the finances and only shown very small glimpses of the financial position at board of directors meetings, which were very infrequent. They appointed a provisional director who was Mr. Carpenter's suggested appointee, who worked hand-in-glove, in my opinion, with Mr. Carpenter to stymie me from exerting any control over the company. Even though you were a 50% owner? Yes. You are 50% of the board's stock? Very interesting, is it not? Yes. It's amazing. Yeah. So much in this case is amazing. I assume you're a legal scholar. If you would have the time to bone up on everything that's going on in this, it reads like a bad detective novel. But to continue, I had no access to any of this. I was frustrated. I was locked out. They closed the door. They hired security guards so I couldn't come onto the premises. So I was only communicating with AT&T through the provisional director, and Mr. Carpenter only showed up at the periodic board meetings as was required. So as part of my effort to try and exert some sort of control, I claimed that the company was being mismanaged, which I thought it was because Mr. Carpenter and I had very different ideas on the direction that the company should go in. I didn't have real specific knowledge, but I wanted the court to understand that I felt that the company was in danger of his mismanagement. When I did sign the agreement, the settlement agreement, I did so because I still retained my position as secretary of the company. I really, at that point in time, I didn't know what the ramifications were of me filing as the treasurer. I thought that we had come to an agreement between Gary and I, and I didn't even know that ATM was technically a separate entity. Judge Clarence Davis hailed our settlement as a great thing, and he was very happy at the time. I guess, long story short, I guess I wasn't aware that I was putting myself in a position of jeopardy when I signed the document. Mr. Allen, when did you create the Shingle Oak Trust? The Shingle Oak Trust was created in June of 1999, basically four years before ATN filed its bankruptcy at a time when I had no idea that there was any risk or there was any problem with ATN. I really thought that we were separated. The company that I had co-founded, dug out of the dirt, so to speak, was going on its way. I was going on my way, and good luck to both of us. Then four years later, give or take, a day before, perhaps the preference period, maybe two days before the preference period passed. Statute of limitations. Statute of limitations. ATN came in out of nowhere and filed this action against me, which really knocked my socks off. I had no idea that this could even be done. I'm a legal neophyte then. Now I have a hard-earned little bit of an education through four years of litigation with Mr. Carpenter to try and get back control of my company or at least to be brought out of my interest. Then over 10 years now with ATN version 2, my child, so to speak, coming back from beyond me detaching myself from it to attack me and basically destroy my life. If you know the answer, what's the status of the adversary action against you in Florida? What's the status of the record there? I don't know. All I think I can say is I think it's stayed. You filed the accounting there, correct? No, no. I filed the accounting periodically over time in Judge Briskman's court and again in front of Judge Gentleman, both of whom were the bankruptcy judges. In Florida. In Florida. I completed the accounting with exhaustive detail, which you may have seen at the end of my motion. I completed that in front of Judge Burns as part of my bankruptcy proceeding. Did you also file that in Florida? I did not. I didn't know that that was. I'm just asking. I could. I'd be happy to make it available to them, but I did not know. It didn't occur to me or my lawyers or anybody to. Mr. Allen, doesn't your course of conduct establishing this offshore trust for your wife, transferring funds which were fraudulently taken from the corporation, failing to comply with the rehabilitation order of the Florida court, being held in contempt by the Florida court, in addition for not repatriating the funds on at least one occasion, more than one occasion, does that constitute a series of wrongful acts on your part? I think one could look at it that way. The way I look at it is, first of all, I didn't, just to correct the record, I didn't set up the trust for the benefit of my wife. I was a beneficiary, my wife was a beneficiary, and my children were all beneficiaries of the Shingaluck Family Trust. That's the street I lived on when the trust was set up, Shingaluck Drive. I feel as though I was trapped with no recourse by the trust structure. I did all I could to comply with the judge's orders, Judge Briskman and Judge Jentleman. How did you comply? You never showed up? You put it off? Oh, I showed up. I was there every time there was any proceeding. I was always represented in front of the court. I'm talking about the repatriation order. I didn't comply because I couldn't comply. Well, that's what I mean. You never repatriated any of the funds the order directed you to repatriate. I didn't comply not because I refused, not because I didn't want to, not because I wanted to end this horror story, because I did. I didn't comply because the trustee simply would not return the money to me or to my wife, both of whom requested that the money be returned to us. I sent them the order of the court saying where to send the money to from a repatriation standpoint, which I believe was to perhaps Mr. Baruch's predecessor as counsel for ATN. But I could not – they would not comply, and therefore I was left holding the bag, quote-unquote, in front of the court and suffering the slings and arrows of potentially going to jail. Well, then why shouldn't the Florida court be able to pursue it further, including pursue whatever funds are left in the Cook Islands or whatever, and also pursuing in the Florida court whether you should be held in contempt if the Florida court deems that you have not tried, haven't complied with an order and you could comply? I mean, this is a contempt there, not here. Yeah, I understand. I can't answer that. It seems like it calls for maybe a legal discussion, and I'm not equipped to answer that. All I would tell you is that I have been given a discharge with the hopes of restarting my life as a 52-year-old man with nothing left, nothing left. I'm entering middle age. I've been in litigation for the better part of 20 years with ATN pursuing me in a scorched earth, in Judge Jennings's words, attempt to recover these funds. ATN refused to settle when there was substantial money available to settle. I liken them to the dog in Aesop's Fable who looked in the water, saw another dog with a meaty bone, tried to drop their bone to grab that one and lost everything. As we withdrew money for living expenses, the vast, vast, vast majority of money went to legal expenses to fight what I termed as the bully who was attacking me. I couldn't get him off my back. It was like I was fighting Reggie White. I could not fling this person off my back. I couldn't end it. And I spent over $1.4 million, and I don't know where ATN, the bankrupt adversary, got all their money, which I assume was probably multiple millions, to pursue myself, my wife, and two of my former law firms. That's a question for them as the bankrupt entity. But for me, perhaps I lost my point of where I was going with that. All right. Okay, Mr. Allen, the red light's on. We thank you. Thank you. All right, we'll give Mr. Baruch two additional minutes on rebuttal. Thank you, Your Honor. Well, if the story reads like a bad spy novel, it was Mr. Allen who wrote the script. What we have is Mr. Allen receiving what is unequivocally a fraudulent transfer in 1999, almost immediately sets up a structure to wire the money offshore. Okay. Do you agree that that was set up in 1999? Yes. Okay. Immediately after he received the money. Okay. Now, we're hearing this now that he's not legally sophisticated. No one came along and complained to him until 2003. And here's why, Your Honor. That's correct. Mr. Freeman, the principal of the company, took over. It took him years to reinstitute management and find out what was going on. In fact, Mr. Freeman bought this lawsuit, did he not? Yeah, he did, and he was entitled to. Yeah, he bought this lawsuit while he was part of Watts 800. Yes, and ATN destroyed Watts 800, misappropriated its customer list. Mr. Freeman was actually borderline homeless himself after ATN destroyed his business. Okay, but Mr. Allen had that money that was paid to him by the other partner and by the corporation for four years. So nobody complained for four years. Yep, and the deadline was four years, and ATN met the deadline, admittedly on the later end of it, but it had the legal right to do what it did, and the 11th Circuit unequivocally agreed. All right. So, Your Honor, to pick up where I left off, Mr. Allen sets up the offshore structure immediately. Now we're hearing he's not legally sophisticated and didn't know what he was doing at the time. Now, when ATN, admittedly a few years later, files bankruptcy and seeks to recover the fraudulent transfer under the Bankruptcy Code, you have Mr. Allen wiring the funds offshore while an injunction proceeding is pending against him, continued at his request. So the trust was set up, but the funds weren't wired until 2003. Is that what you're saying? Offshore, yes. Offshore. That's correct. And it was when Judge Briskman, we had a hearing before Judge Briskman to freeze the funds. Over ATN's objection, Allen sought a continuance and then wired the funds during the continuance period. You can imagine Judge Briskman was not happy once this came to light and then enters these important orders that specifically traces the funds and says, under 11th Circuit law, that trust is void. All right, Mr. Brooke, I think the red light's on. I think we understand your respective positions. Thank you. We'll take the matter under advisement. Appreciate it. Thank all of you.